```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 6, 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
NATAVIA LOWERY,                                     :
                                                    :
                               Plaintiff,           :          10 Civ. 7284 (KBF)
                                                    :
               -v-                                  :
                                                    :          OPINION & ORDER
                                                    :
CITY OF NEW YORK, et al.,                            :
                                                    :
                               Defendants.          :
                                                    :
-------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On September 22, 2010, <u>pro</u> <u>se</u> plaintiff Natavia Lowery commenced this

action under 42 U.S.C. § 1983 for violations of her constitutional rights against the

City of New York, the New York City Department of Corrections ("DOC"), and DOC

employees Commissioner Dora B. Schriro, "Captain Santiago,"[1] and other unknown

corrections officers, both individually and in their official capacities.[2] (Compl. ¶¶ 2,

8–11, ECF No. 2). Plaintiff's complaint, liberally construed, asserts claims for false

arrest, malicious prosecution, and sexual abuse, and she seeks both money damages

and injunctive relief. (<u>Id.</u> ¶¶ 16–18, 20, 22–23, 29, 33–35.)

---

[1] According to the docket, to date, plaintiff has not effected service on defendant Santiago—it appears that service was attempted on October 21, 2010, but plaintiff was informed at that time that this individual needed to be served at Rikers Island. (ECF No. 9.) The docket does not reflect any subsequent attempts at service. In its memorandum of law in support of the instant motion, Corporation Counsel also states that no "Captain Santiago" has requested representation in connection with this action. (Mem. of Law at 2 n.1, ECF No. 47.) Even assuming this individual had been properly served, however, the action against him would still be dismissed for the reasons set forth herein.

[2] In her prayer for relief, plaintiff states that she seeks money damages from "defendant Sean Conway" as well as other unknown DOC officers. (<u>Id.</u> ¶ 34) To the extent plaintiff seeks damages from either Conway or other DOC officers, for the reasons set forth herein, the complaint would be dismissed as to these individuals as well regardless of the fact that they have not been served.

Before the court is a motion to dismiss the complaint by defendants. For the reasons set forth below, defendants' motion is GRANTED and this action is dismissed, subject to the Court's instructions below.

I.     PROCEDURAL HISTORY

Following the filing of this action, on October 4, 2010, United States District Judge Laura T. Swain referred the action to United States Magistrate Judge Frank Maas for general pretrial supervision. (ECF No. 3.) On January 14, 2011, defendants' counsel requested, inter alia, a stay of this action pending resolution of the parallel state criminal proceeding in which plaintiff was a defendant and which formed the basis for several of her claims. (ECF No. 11.) Judge Maas directed plaintiff to respond to the application within two weeks; when plaintiff failed to do so, Judge Maas granted defendants' request for a stay on February 16, 2011. (ECF Nos. 11, 12.)

This case was transferred to the undersigned on November 16, 2011. (ECF No. 13.) Following transfer, this Court vacated the order of reference to Judge Maas and ordered the parties to appear for a telephonic status conference on January 6, 2012. (ECF No. 14.) During the conference, and in a subsequent Order, the Court ordered the parties to notify the Court of the resolution of plaintiff's parallel criminal proceeding within ten days of such resolution. (ECF No. 15.) The Court continued the stay and received updates as to the status of the parallel criminal proceeding throughout 2012 and 2013. (ECF Nos. 18, 20–22, 24–29.) In a letter dated December 9, 2013, defendants informed the Court that plaintiff's

2

criminal case had been dismissed and sealed, and requested that the stay of this action be lifted. (ECF No. 30.) Accordingly, in an Order dated December 10, 2013, the Court lifted the stay. (ECF No. 31.)

Following the execution of releases by plaintiff pursuant to New York Criminal Procedure Law §§ 160.50/160.55 (see ECF Nos. 33–39, 41), on March 21, 2014, defendants moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45.) Plaintiff opposed the motion in both an April 4, 2014 letter and an April 21, 2014 opposition, and defendants submitted their reply in further support of their motion to dismiss on April 29, 2014. (ECF Nos. 50–52.) Plaintiff submitted an additional letter, dated May 6, 2014, in response to defendants' arguments concerning whether she should be granted leave to amend the complaint should the motion to dismiss be granted, which the Court accepted. (ECF Nos. 53, 54.)

II.     FACTS

Plaintiff is currently an inmate at Bedford Hills Correctional Facility, a New York state prison, after having been "convicted in the highly publicized murder trial of Linda Stein . . . [and] sentenced to a term [of] life imprisonment." (Compl ¶ 13.) Previously, and at all relevant times for the purposes of this action, plaintiff was an inmate at the Rose M. Singer Center on Rikers Island, a DOC facility. (Stackhouse Decl. Ex. C, ECF No. 48.) On January 13, 2010, plaintiff was arrested for throwing a mixture of urine and other substances at a corrections officer. (Id. Ex. B)[3] On

---

[3] Plaintiff alleges she was arrested and charged with the criminal counts underlying this action on March 3, 2009, and that she was transferred from Bedford Hills to the DOC on June 11, 2010.

May 17, 2010, plaintiff was indicted by a grand jury in New York Supreme Court, Bronx County, on charges of aggravated harassment of an employee by an inmate, obstructing governmental administration in the second degree, and criminal mischief in the fourth degree. (Id. Ex. C; Compl. ¶¶ 14–15.)

Plaintiff alleges that this indictment was based on "material false accusations, in the absence of any competent, legally sufficient and admissible evidence to sustain such offense." (Compl. ¶ 16.) Plaintiff alleges that the investigations conducted by defendants DOC and City of New York were "inadequate, false, and were tainted by official misconduct." (Id. ¶ 17.) Plaintiff also alleges that she was placed under arrest by defendants DOC and City of New York without "legal justification and/or probable cause." (Id. ¶ 20.) On December 4, 2013, the underlying criminal prosecution of plaintiff was dismissed, and the records thereof were sealed. (Stackhouse Decl. Ex. D.)

Plaintiff further alleges that she was sexually harassed on two occasions by defendant Captain Santiago, a DOC corrections officer. (Compl. ¶¶ 9, 22, 28.) On the first occasion, for which plaintiff does not provide a date, plaintiff alleges that Santiago made "sexual advancement" towards her, and warned her that "there would be reprisals and repercussions" if she complained. (Id. ¶¶ 22–23.) Following this encounter, plaintiff alleges that she spoke with her family members about the

_____

(Compl. ¶¶ 12, 14.) The Court notes, however, that the official report of plaintiff's arrest indicates that she was arrested on January 13, 2010. (Stackhouse Decl. Ex. B.) The Court also notes that plaintiff has been incarcerated at Bedford Hills since this action was filed; accordingly, it is possible that plaintiff meant to allege that she was transferred out of DOC on June 11, 2010. In any event, the Court credits the public documents concerning the timeline of events cited herein, and finds the discrepancies with the complaint to be immaterial to the resolution of the instant motion.

incident and, as a result, her step-father filed a complaint with the "Inspector General's Office." (Id. ¶ 24.) On the second occasion, plaintiff alleges that, on June 13, 2010, Santiago exposed his genitals to her and stated that he was sexually attracted to her. (Id. ¶¶ 28–29).

Plaintiff alleges that defendants Schriro, DOC, and City of New York "engage in a custom and or [sic] policy which caused the abrogation of plaintiff's Constitutional rights." (Id. ¶ 31.) Plaintiff also alleges defendants Santiago and other unknown officers "acted in a manner which was inconsistent with that of trained law enforcement personnel." (Id. ¶ 32.)

III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citations and internal quotation marks omitted).

Accordingly, the Court "liberally construe[s] pleadings and briefs submitted by pro se litigants . . . reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).  However, even a pro se complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see Fuentes v. Tilles, 376 F. App'x 91, 92 (2d. Cir. 2010) (affirming district court's dismissal of pro se complaint for failure to state a claim).

On a motion to dismiss, a court may properly consider documents that have been attached as exhibits to the complaint as well as documents that have been incorporated by reference. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Documents are incorporated by reference when the complaint "relies heavily upon its terms and effect" such that it is "integral" to the pleadings. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted) (quoting Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995)). A court may also take judicial notice of court documents and other publically available materials of which plaintiff had actual notice and relied upon in framing his or her complaint. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

IV.    DISCUSSION

Construed liberally, plaintiff alleges claims under 42 U.S.C. § 1983 for (A) malicious prosecution; (B) false arrest; (C) sexual abuse; (D) supervisory liability as to defendant Schriro; and (E) municipal liability against defendant City of New York.[4]  Each of these claims fail either as a matter of law or by virtue of the fact that plaintiff has failed to adequately plead the claims with specificity.

A.    Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff must allege malicious prosecution under state law along with a post-arraignment deprivation of liberty sufficient to implicate his Fourth Amendment rights. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003); Conway v. Vill. of Mount Kisco, N.Y., 750 F.2d 205, 214 (2d Cir. 1984).  Under New York law, a claim for malicious prosecution requires proof of the following elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks, 316 F.3d at 136 (internal quotation marks and citation omitted).

Even assuming plaintiff has adequately alleged the other elements, her malicious prosecution claim fails because she does not, and cannot, allege that the underlying criminal proceedings were terminated in her favor.  It is undisputed that

---

[4] The DOC is dismissed as a defendant in this action because it is not a suable entity under New York law. N.Y. City Charter Ch. 17 § 396; see Adams v. Galetta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (citing cases).

7

this action was resolved by plaintiff receiving an adjournment in contemplation of dismissal. (Stackhouse Decl. Ex. E.)[5] Under New York law, an adjournment in contemplation of dismissal is not a favorable termination of criminal proceedings for the purposes of a malicious prosecution claim. Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001). Accordingly, plaintiff's § 1983 malicious prosecution claim fails as a matter of law.[6]

B.    False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Under New York law, a plaintiff claiming false arrest must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citing Broughton v. New York, 335 N.E.2d 310, 314 (N.Y. 1975)).

"[T]he existence of probable cause is an absolute defense to a false arrest claim" under New York law. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (citing Weyant, 101 F.3d at 852). A law enforcement officer "has probable cause to

---

[5] Because plaintiff's malicious prosecution claim necessarily requires her to show that the underlying criminal proceeding was terminated in her favor, the Court may take judicial notice of this excerpt from the court file reflecting this resolution because it is integral to plaintiff's complaint. See Chambers, 282 F.3d at 152.
[6] Plaintiff's malicious prosecution claim also fails because she has offered no facts to rebut the presumption of probable cause raised by her grand jury indictment. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

8

arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152 (internal quotation marks omitted) (quoting Weyant, 101 F.3d at 852). Though a rebuttable presumption of probable causes arises from a grand jury indictment in the context of a claim for malicious prosecution, no such presumption exists in an action for false arrest under New York law. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (citing Broughton, 335 N.E.2d at 313).

Even assuming plaintiff had adequately alleged the personal involvement of any defendant in her arrest, which she has not,[7] the complaint offers absolutely no factual allegations whatsoever from which the Court could infer that her arrest lacked probable cause or was otherwise without justification. Rather, plaintiff alleges (in conclusory fashion) that her arrest was without "legal justification and/or probable cause," that her indictment was the product of false allegations, and that the investigation into her conduct was otherwise insufficient and "tainted by official misconduct." (Compl. ¶¶ 16, 17, 20.) These legal conclusions and bare references to the elements of a claim, absent any specific factual allegations, cannot survive dismissal pursuant to Rule 12(b)(6). See Iqbal, 556 U.S. at 678; Fuentes, 376 F. App'x at 92.

---

[7] Failure to allege facts concerning the personal involvement of any defendant is fatal to a plaintiff's claims under 42 U.S.C. § 1983. E.g., Costello v. City of Burlington, 632 F.3d 41, 48–49 (2d Cir. 2011) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Here, though the complaint references other, unknown DOC officers (see Compl. ¶¶ 10, 34), it does not include any factual allegations about these individuals.

C.    Sexual Abuse

The Eighth Amendment[8] prohibits, inter alia, the "unnecessary and wanton infliction of pain" on prisoners as cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (citation and internal quotation marks omitted). In order for a prisoner-plaintiff to allege a violation of the Eighth Amendment, he or she must allege that (1) the punishment to which he was subjected was "objectively, sufficiently serious"; and (2) the prison official involved had "a sufficiently culpable state of mind." Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) (citations and internal quotation marks omitted). The Second Circuit has recognized that allegations of sexual abuse by corrections officers are cognizable as Eighth Amendment claims, as "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Id.

In the complaint, plaintiff alleges that defendant Captain Santiago verbally propositioned her on two occasions, and exposed his genitals to her on the second occasion. (See Compl. ¶¶ 22–23, 28–29.) If true, these allegations are repugnant to the standards to which we hold the officers of our nation's corrections facilities, and may form the basis for a cause of action under state law (assuming that such an action is brought within the applicable statute of limitations). But to sustain a §

---

[8] Treatment of pretrial detainees has also been evaluated, for the purposes of § 1983 claims, under the Due Process Clause of the Fourteenth Amendment, though the standard is the same as under the Eighth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

1983 action for sexual abuse, a plaintiff's allegations must rise to the level of an Eighth Amendment violation; here, they do not.

In <u>Boddie</u>, the Second Circuit held that the "isolated episodes of harassment and touching alleged," though "despicable and, if true, . . . potentially . . . the basis of state tort actions," "do not involve a harm of federal constitutional proportions as defined by the Supreme Court." <u>Boddie</u>, 105 F.3d at 860–61 (alleging corrections officer touched plaintiff's penis, forcibly pressed her breasts against his chest, and harassed him verbally). At most, plaintiff alleges two isolated instances of verbal abuse without any physical contact, which courts applying <u>Boddie</u> have held does not violate the Eighth Amendment.[9] In fact, courts in this Circuit applying <u>Boddie</u> have dismissed § 1983 claims of prisoner sexual abuse on either identical or less severe facts.[10] Accordingly, plaintiff's sexual abuse claim under § 1983 is dismissed as a matter of law.

---

[9] <u>See</u> <u>Savage v. Perez</u>, No. 09 Civ. 5208 (PKC), 2010 WL 4739811, at *3 (S.D.N.Y. Nov. 17, 2010) (alleging corrections officer "winked at plaintiff, gazed into his eyes, became aroused in his presence, displayed sexual gestures, and informed him that he would like have intercourse with him"); <u>Jones v. Harris</u>, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) (alleging corrections officer "verbally propositioned a prisoner on a single occasion, without engaging in any physical activity"); <u>Young v. Coughlin</u>, No. 93 Civ. 0262 (DLC), 1998 WL 32518, at *6 (S.D.N.Y. Jan. 29, 1998), <u>aff'd</u>, 182 F.3d 902 (2d Cir. 1999) (alleging corrections officer looked at and spoke to plaintiff "in a manner as if to suggest that [plaintiff] was a homosexual," suggested that plaintiff was likely to be raped in prison, and encouraged other prisoners to sexually abuse plaintiff).

[10] <u>See</u> <u>Anderson v. Nassau Cnty.</u>, No. 99 Civ. 5838 (FB), 2004 WL 1753262, at *1-2 (E.D.N.Y. May 13, 2004) (alleging corrections officer "cursed him, exposed his penis . . . , and made lewd suggestions"); <u>Smith v. Chief Exec. Officer</u>, No. 00 Civ. 2521 (DC), 2001 WL 1035136, at *1 (S.D.N.Y. Sept. 7, 2001) (alleging "one isolated incident [where plaintiff] was allegedly verbally harassed and grabbed without his consent"); <u>Montero v. Crusie</u>, 153 F. Supp. 2d 368, 372–373 (S.D.N.Y. 2001) (alleging corrections officer, <u>inter alia</u>, "threw kisses" at plaintiff, "squeezed plaintiff's genitalia" on several occasions, and spread rumors about plaintiff's sexuality).

D.     Supervisory Liability as to Defendant Schriro

"It is well settled that, in order to establish a defendant's individual liability

in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's

personal involvement in the alleged constitutional deprivation." Grullon v. City of

New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted).  According to the

Grullon court:

> [P]ersonal involvement of a supervisory defendant may be shown by
> evidence that: (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong, (3)
> the defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing to
> act on information indicating that unconstitutional acts were
> occurring.

Id. at 139 (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).[11]  That an

individual held a high position of authority does not, by itself, suffice to implicate

his or her personal involvement for purposes of a suit under § 1983.  See Black v.

Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); Wright, 21 F.3d at 501.

The only reference to defendant Schriro in the complaint is in the conclusory

statement that she, as well as the DOC and the City of New York, engaged in a

"custom and or [sic] policy which caused the abrogation of the plaintiff's

---

[11] The Second Circuit has noted that the Supreme Court's decision in Iqbal "may have heightened
the requirements for showing a supervisor's personal involvement with respect to certain
constitutional violations."  Grullon, 720 F.3d at 139. Like the Grullon court, see id., however, this
Court also need not reach the impact of Iqbal on these standards because the complaint fails to
adequately plead personal involvement by defendant Schriro under Colon for the reasons set forth
herein.

Constitutional rights." (Compl. ¶ 31.) This allegation, devoid of any facts or specificity, is plainly insufficient to adequately allege the personal involvement of Schriro in any of the events at issue in the complaint—plaintiff does not allege that Schriro participated in any of the events, that she knew about them, or facts from which the Court could infer that her conduct was otherwise grossly negligent. Though plaintiff alleges that her step-father filed a complaint concerning defendant Captain Santiago's conduct with the Inspector General's Office (see id. ¶ 24), even if the Court assumes that a grievance was filed and received by Schriro, the mere receipt of grievances, without more, is insufficient to allege personal involvement for purposes of § 1983. See, e.g., Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). As a result, plaintiff fails to adequately allege any involvement by Schriro in the events described in the complaint as is required to plead a § 1983 action against her.

      E.    Municipal Liability

To prevail against defendant City of New York on a § 1983 claim, plaintiff must allege that a particular municipal policy or custom contributed to the deprivation of her rights. See, e.g., Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Davis v. City of New York, 75 F. App'x 827, 829 (2d Cir. 2003) (collecting cases). Plaintiff cannot sue the City under § 1983 "for an injury inflicted solely by its employees or agents," but rather must identify a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," pursuant to which it inflicted the injury. Monell, 438

U.S. at 694; see also Oklahoma v. Tuttle, 471 U.S. 808 (1985). Thus, plaintiff must both "prove the existence of a municipal policy or custom" and "establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights." Vippolis v. Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks omitted).

Even accepting plaintiff's allegations in the complaint as true, and construing them liberally, plaintiff fails to plead a Monell claim against the City. First, as set forth above, plaintiff has failed to allege a constitutional violation on the basis of malicious prosecution, false arrest, or sexual abuse. Second, rather than offer specific factual allegations, plaintiff does no more than reiterate the "custom and policy" language in Monell and suggests that such conduct permitted "poor supervision and training of Defendant Santiago." (Compl. ¶ 31; Opp. at 2, ECF No. 51.) These kinds of boilerplate, conclusory allegations are insufficient to withstand dismissal.[12]

---

[12] See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (overruled on other grounds) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); Cuevas v. City of New York, No. 07 Civ. 4169 (LAP), 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) (plaintiff must "show [the] Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right"); Manganiello v. City of New York, 07 Civ. 3644 (HB), 2008 WL 2358922, at *10 (S.D.N.Y. June 10, 2008) (the "mere assertion that a municipality has . . . a policy is insufficient to establish Monell liability") (internal quotation marks and citation omitted); McAllister v. New York City Police Dept., 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation.").

V.    LEAVE TO AMEND

In her opposition, plaintiff requests, in substance, leave to amend the

complaint pursuant to Rule 15 in the event the Court decides to grant defendants'

motion to dismiss.  (See Opp. at 4; 4/4/14 Letter at 2, ECF No. 50.)

Rule 15(a)(2) provides that leave to amend "should be freely given when

justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally

granted, may properly be denied for: undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc."  Ruotolo v. City of N.Y., 514 F.3d 184,

191 (2d Cir. 2008) (internal quotation marks omitted) (quoting Foman v. Davis, 371

U.S. 178, 182 (1962)).  A "court should not dismiss [a pro se complaint] without

granting leave to amend at least once when a liberal reading of the complaint gives

any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99,

112 (2d Cir. 2000).  Nonetheless, "a futile request to replead should be denied."  Id.

"[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

In light of the deficiencies identified herein, the Court does not believe

plaintiff will be able to adequately allege a viable constitutional claim under § 1983.

First, her claims for malicious prosecution and sexual abuse fail as a matter of law.

Second, with respect to her claim for false arrest, plaintiff has alleged no facts from

which the Court can plausibly infer that she was confined without justification by any defendant named in this action.[13]

Nevertheless, because plaintiff has not previously amended her complaint, the Court will permit plaintiff to write a letter to the Court by **July 7, 2014** setting forth any additional factual allegations that she believes will cure these deficiencies and that she would include in an amended complaint.  If the Court receives such a timely letter, the Court will construe it as a motion for leave to amend under Rule 15(a)(2), and will either rule on that motion or direct defendants to respond.  If the Court does not receive such a letter by July 7, 2014, this action will remain closed.

---

[13] To the extent plaintiff may seek to assert false arrest claims against additional, unknown DOC employees, these claims would be barred by the applicable three-year statute of limitations and do not relate back to the original complaint under Federal Rule of Civil Procedure 15(c).  See Wallace v. Kato, 549 U.S. 384, 397 (2007); Owens v. Okure, 488 U.S. 235, 251 (1989); Barrow v. Wethersfield, 66 F.3d 466, 470 (2d Cir. 1995) ("We are compelled to agree with our sister circuits that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.").

VI.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is GRANTED.  Plaintiff may write the Court a letter as described above by **July 7, 2014**.

The Clerk of Court is directed to close the motion at ECF No. 45, and to close this action.

SO ORDERED.

Dated:      New York, New York
            June 6, 2014

                              _____
                              KATHERINE B. FORREST
                              United States District Judge


Copy to:

Natavia Lowery
10-G-0368
Bedford Hills Correctional Facility
P.O. Box 1000
Bedford Hills, NY 10507